IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES LEZINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 18-cv-505-DWD |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| JOHN BALDWIN, | ) |
| ROB JEFFREYS, | ) |
| KAREN JAIMET, | ) |
| MICHAEL MONJE, | ) |
| WEXFORD HEALTH SOURCES, | ) |
| INC., | ) |
| RHONDA REUTER, and | ) |
| KIMBERLY REEDER, | ) |
| | |
| Defendants.[1] | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Illinois Department of Corrections ("IDOC"), John Baldwin, and Karen Jaimet (the "IDOC Defendants") (Doc. 107), and the motion for summary judgment filed by Defendants Wexford Health Sources and Kimberly Reeder (Doc. 101). The case is

---

[1] Defendant Wexford was incorrectly identified in the First Amended Complaint as "Wexford Health *Services*, Inc." (Doc. 53) (emphasis added). The Clerk of Court is **DIRECTED** to correct Defendant's name to Wexford Health Sources, Inc. on the docket sheet.

Further, pursuant to information provided in Defendants IDOC, Baldwin, and Jaimet's Motion for Summary Judgment, Defendant Baldwin is no longer the Acting Director of the Illinois Department of Corrections (Doc. 108-5), and Defendant Jaimet is no longer the Warden of Pinckneyville Correctional Center (Doc. 108-6). Accordingly, the Clerk is **DIRECTED** to add Rob Jeffreys, the current Acting Director of the Illinois Department of Corrections, and Michael Monje, the current Warden of Pinckneyville Correctional Center as Defendants in this action. *See* Fed. R. Civ. P 25(d). Defendants Baldwin and Jaimet remain in this matter in their individual capacities (Doc. 53).

1

currently stayed against Defendant Rhonda Reuter (Doc. 96). Plaintiff filed responses in opposition (Doc. 114, Doc. 115) and Defendants Wexford and Reeder filed a reply (Doc. 116). For the reasons set forth below, the IDOC Defendants are granted judgment as a matter of law. The Motion filed by Wexford and Reeder is denied.

## Background and Procedural History

Plaintiff James Lezine is a disabled inmate in the custody of the Illinois Department of Corrections ("IDOC"). In this matter, Plaintiff alleges violations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 794, and the Eighth Amendment (Doc. 1; Doc. 7). Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, counsel was recruited for Plaintiff (Doc. 8). On June 1, 2018, Magistrate Judge Stephen Williams found Plaintiff to be incompetent and appointed a guardian ad litem for Plaintiff (Docs. 35, 38). Plaintiff filed an Amended Complaint on May 29, 2019 (Doc. 53). Plaintiff now proceeds on two counts: Count 1 alleges violations under the ADA and Rehabilitation Act against the IDOC Defendants and Count 2 alleges deliberate indifference against all Defendants (Doc. 53).

## Preliminary Injunction Hearing

On April 26, 2018, the Court held a hearing on Plaintiff's request for a preliminary injunction (Doc. 28). The Court heard testimony from Plaintiff and his former roommate, Tirnell Williams[2] (Doc. 28). The Court also heard testimony from Christine Brown, Pinckneyville's Health Care Administrator (Doc. 28). The Court continued the hearing

---

[2] Mr. Williams assisted Plaintiff will the initial filing of his Complaint in February 2018 (Doc. 1).

to June 1, 2018. At the June 1, 2018 hearing, the Court heard testimony from Plaintiff's then roommate, Larry Traman, along with Defendants Nurse Reuter and Nurser Reeder. At the hearing, Nurse Reuter testified that Plaintiff could dress and bathe himself, and change his own diapers (Doc. 102-4, p. 17), but acknowledged that Plaintiff suffers from short-term memory loss and is generally unable to retain certain information (Doc. 102-4, pp. 20-22).

Nurse Reeder testified similarly (Doc. 102-4, pp. 25, 27). Specifically, Nurse Reeder represented that she would assist Defendant if he soiled himself and arrange for baths for Plaintiff if they were needed (Doc. 102-4, p. 25). Reeder further testified that nurses were not required to be present when Plaintiff bathed, and healthcare porters were in charge of assisting Plaintiff into the bathtub (Doc. 102-4, p. 25). If the healthcare porters were not available, Nurse Reeder stated that officers would assist Plaintiff (Doc. 102-4, p. 29). Reeder further testified that Plaintiff would receive assistance from someone in his room or another nurse if he needed assistance cleaning himself (Doc. 102-4, p. 28). Finally, Reeder testified that security was in charge of ensuring Plaintiff was offered baths, and that the information was noted in the officers' security log (Doc. 102-4, pp. 29-30). However, Reeder stated that she did not ensure Plaintiff was actually taking baths regularly and would not be present when he bathed (Doc. 102-4, pp. 25, 29-30).

The Court also heard testimony from Larry Traman, Plaintiff's roommate in June 2018. Mr. Traman testified generally that Plaintiff's medical needs appeared to be currently met, and that Plaintiff could assist himself with his hygiene. The Court emphasized that the testimony from Mr. Traman, conflicted with the prior testimony the

3

Court heard from Plaintiff's prior roommate in February 2018, Mr. Tirnell Williams. The Court indicated that "Mr. Williams testified unequivocally that there were deficiencies in Mr. Lezine's care." (Doc. 102-4, p. 31). However, the testimony offered at the June 1, 2018 did not support a finding that Plaintiff was *currently* being treated improperly. Accordingly, Plaintiff withdrew his request for preliminary injunction, and the case was permitted to continue as to the allegations raised concerning Plaintiff's insufficient care from May 2017 through 2018. Magistrate Judge Williams also raised concerns of who was in charge of making sure that Plaintiff is bathed regularly (Doc. 102-4, p. 33). Finally, Magistrate Judge Williams appointed a guardian ad litem for Plaintiff based on the testimony concerning his mental deficits.

## Undisputed Facts

The following facts are not genuinely disputed for purposes of summary judgment. In or about May 2017, Plaintiff suffered a stroke. Plaintiff suffers from right side paralysis and cognitive memory loss. On May 16, 2017, Plaintiff transferred to Pinckneyville Correctional Center ("Pinckneyville") and was admitted to live-in status in the infirmary (Doc. 108-1). Plaintiff's medical records indicate that his self-care is "deficit" and that he has "impaired mobility" (Doc. 108, p. 1).

Plaintiff uses a wheelchair. Pinckneyville's Health Care Administrator ("HCA"), Christine Brown[3], represented that Plaintiff was prescribed his wheelchair from a medical doctor, and that Plaintiff never communicated that he had any issues with this

---

[3] Plaintiff has not named HCA Christine Brown as a defendant in this matter.

wheelchair to the health care staff's attention (Doc. 108-4). Generally, Plaintiff can transfer in and out of his wheelchair, change his own diapers, and was regularly educated regarding the call button above his bed. Plaintiff has used the available call light on a few occasions. Plaintiff rarely asks for assistance, and frequently states that he was doing "fine" (*See* generally, Doc. 108). Plaintiff primarily uses diapers. Occasionally, Plaintiff expresses embarrassment when he needs his diapers changed (*See* generally, Doc. 108). Plaintiff is offered baths regularly, although the nurses do not assist Plaintiff with his baths. The prison officers and/or inmate porters oversee bath schedules and inmate bathing at Pinckneyville.

Plaintiff stayed in the infirmary from May 16, 2017 through February 28, 2018, when he was briefly discharged from the infirmary to the general population. HCA Brown represented that Plaintiff requested to be housed in the general population (Doc. 108-4). On multiple occasions, from May 16, 2017 through February 28, 2018, Plaintiff made various statements regarding his stay in the infirmary (*See* Doc. 108, pp. 15, 34, 43, 81, 87, 335, 435, 454). On some occasions, Plaintiff questioned why he was in the infirmary or otherwise made statements suggesting he was confused or struggled with memory loss (*See* Doc. 108, pp. 15, 34, 43, 81, 87, 335, 435, 454). On February 27, 2018, Plaintiff asked, "where I'm going?" (Doc. 108, p. 461). On February 28, 2018, he said, "I'm ready to go" (Doc. 108, p. 462). Plaintiff was discharged to the general population on February 28, 2018 and placed in an ADA compliant cell with an ADA attendant (Doc. 108-4). Plaintiff was admitted back to the infirmary on March 9, 2018 (Doc. 108-4, at ¶ 4).

During the time relevant to Plaintiff's Complaint, Defendant John Baldwin was the then Acting Director of IDOC (Doc. 108-5) and Defendant Karen Jaimet was the Warden of Pinckneyville Correctional Center (Doc. 108-6).  Baldwin and Jaimet both stated in sworn affidavits that (1) they had no personal recollections of Plaintiff, (2) were not involved with the day-to-day decision making for medical treatment at Pinckneyville, and (3) could not otherwise determine Plaintiff's required plans of care (Doc. 108-5, Doc. 108-6).

## Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(a)).  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).  In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Bunn*, 753 F.3d at 682 (citing *Anderson*, 477 U.S. at 255); *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

**Discussion**

I.  **Deliberate Indifference**

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs" as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). This indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 829. "By contrast, mere negligence in the provision of medical care does not constitute a violation of the Amendment." *Id.* A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care, or even the best care possible *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Therefore, a prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), *cert. denied,* 140 S. Ct. 50, 205 L. Ed. 2d 38 (2019). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a

7

layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)) (internal markings omitted). None of the Defendants challenge that Plaintiff's injuries and paralysis rise to the level of being serious medical needs; regardless, his documented ongoing medical needs are sufficient to establish that Plaintiff has objectively serious medical needs.

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of the risk to the inmate's health, and then the official must disregard that risk. *Gayton v. McCoy*, 593 F.3d 610, 653 (7th Cir. 2010). The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). However, a medical professional's choice of an easier, less efficacious treatment can rise to the level of

8

violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

### A. The IDOC Defendants

When it comes to non-medical officials, the Seventh Circuit has "long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019), *cert. denied,* 140 S. Ct. 50 (2019). "If a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). However, non-medical officials can be held liable for deliberate indifference if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Giles*, 914 F.3d at 1050 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

An inmate's correspondence to a prison official may thus establish a basis for personal liability under § 1983 where that correspondence, "in its content and manner of transmission" gave the official sufficient notice that the prisoner's serious medical condition was not being treated by prison medical providers, yet the official took no action to assist in obtaining care for the prisoner. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citation omitted). As for medical administrators who are not directly responsible for providing medical care, they can be held liable as supervisors if they know of and facilitate, approve, condone, or turn a blind eye to medical personnel providing inadequate treatment. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

9

Plaintiff argues generally that the IDOC Defendants were deliberately indifferent to his serious medical needs by deferring to other individuals to ensure Plaintiff was properly bathed, by transferring him to the general population in February 2018, and by generally failing to provide meaningful care, adequate living conditions, and safety from known risks of falls or other injuries.

The IDOC Defendants – IDOC, Baldwin, and Jaimet – argue they cannot be held liable for deliberate indifference to Plaintiff's medical needs because they had insufficient personal involvement in his medical care.  Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burns v. Fenoglio*, 525 F. App'x 512, 515 (7th Cir. 2013) (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). "[T]op-level administrators are entitled to delegate to others the responsibility for specific prison functions, including providing medical care." *Id.* "If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Giles*, 914 F.3d at 1049 (quoting *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). Non-medical prison officials can be held liable for deliberate indifference, however, where they have actual knowledge or a reason to believe that prison medical staff are mistreating or failing to treat a prisoner. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)) "Non-medical defendants cannot simply ignore an inmate's plight." *Id.*  However, "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Id.*

Here, there is no evidence that the IDOC Defendants had actual knowledge of

Plaintiff's medical treatment, his authorization to be transferred to the general population, or any complaints of alleged medical deficiencies or problems with his medical care or accommodations. Indeed, the only IDOC employee that appears to have direct knowledge of the issues raised in Plaintiff's Complaint was HCA Christine Brown, whom Plaintiff has not named as a defendant in this matter. Whereas Defendants Baldwin and Jaimet affirmatively stated in their affidavits that they had no personal recollections of Plaintiff and were not involved with the day-to-day decision making for Plaintiff's medical treatment or plans of care (Doc. 108-5; Doc. 108-6). Plaintiff has not offered any evidence to dispute these statements or to create a material dispute of fact concerning Defendants' personal involvement. There is also no evidence that the IDOC Defendants were in any way involved in decisions made regarding Plaintiff's healthcare. The IDOC Defendants cannot be held liable solely because they were in charge. *E.g., Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 507–08 (7th Cir. 2017) ("[T]here is no vicarious liability in a suit under section 1983."). Accordingly, the IDOC Defendants should be granted summary judgment on the deliberate indifference claim in Count 2.

### B. Wexford and Nurse Reeder

Defendants Wexford and Nurse Reeder do not challenge that Plaintiff has objectively serious medical needs. Thus, the issue presented by their motion for summary judgment is whether their conduct with respect to the treatment of Plaintiff constituted deliberate indifference. Deliberate indifference "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir.

11

2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution."). In the context of medical professionals, the deliberate indifference standard has been described as the "professional judgment" standard. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

Under this standard, in order for a prison medical professional to be held liable for deliberate indifference, his or her treatment decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain*, 512 F.3d at 895. In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain*, 512 F.3d at 894–95); *see also Holloway*, 700 F.3d at 1073 ("There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008))).

Plaintiff contends that Nurse Reeder was deliberately indifferent to his medical needs by generally deferring to other individuals to ensure Plaintiff was properly bathed, despite Plaintiff's known cognitive defects and physical conditions. As for Wexford, Plaintiff argues that Wexford failed to provide appropriate training to its employees, and specifically maintained a practice or policy of not ensuring that patients, like Plaintiff, received regular bathing or hygiene care and cleaning following accidents involving

12

feces. Defendant Reeder argues that she was not deliberately indifferent to Plaintiff's medical needs because she provided him with his medications, consistently examined Plaintiff, taught him to use the call button, assisted Plaintiff in changing his diapers or cleaning up if they were soiled, and took steps to ensure Plaintiff was offered baths. In sum, Reeder suggest that there is no evidence that Plaintiff was receiving insufficient care, and that Plaintiff never expressed needing additional assistance.

Wexford also argues that there is no evidence showing either an express policy or widespread practice resulting in a constitutional depravation or injury so to sustain a claim against it pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under controlling precedent, a private corporation that contracts to provide essential government services can be held liable under § 1983, but not under a theory of *respondeat superior*. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). The corporation can only be held liable if "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Id.*; *see also Monell,* 436 U.S. at 658. Therefore, in order to recover against Wexford, Plaintiff must offer evidence that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796. Here, Plaintiff is arguing that Wexford maintained a policy or custom that resulted in its nurses deferring to third-parties or other non-health care providers to ensure the proper hygiene and bathing of patients with physical and mental defects.

13

In light of Plaintiff's documented mental health defects, a reasonable juror could question the appropriateness of Defendants' decisions to rely on Plaintiff's affirmative statements in determining whether Plaintiff's medical and hygiene needs were met. Further, viewing all of the evidence and reasonable inferences therefrom in a light most favorable to Plaintiff, a reasonably jury could infer that Defendant Reeder substantially department from professional judgment by leaving Plaintiff's hygiene care and schedule up to Plaintiff's discretion and to non-healthcare professionals in charge of his bathing schedule given Plaintiff's known and documented mental defects. Accordingly, a genuine dispute of material fact exists as to whether Defendant Reeder was merely negligent or whether her conduct was reckless or intentional. Similarly, a reasonable jury could conclude from the evidence presented that Wexford maintained a widespread practice of failing to properly ensure regular bathing schedules for inmates with physical and mental defects, and that practice caused Plaintiff to suffer unnecessary pain. As such, Defendants Reeder and Wexford are not entitled to summary judgment.

**II.     ADA and Rehabilitation Act**

Plaintiff contends that the IDOC Defendants violated the ADA and Rehabilitation Act by failing to provide him with reasonable accommodations. Plaintiff argues generally that he was denied access to proper hygiene and an adequate wheelchair, which are both considered "programs or activities" within the meaning of the ADA. Plaintiff also argues that Defendants have failed to provide Plaintiff with meaningful care, adequate living conditions, and safety from known risks of falls or other injuries, and that his transfer to the general population in February 2018 denied him access to meaningful

14

care and adequate living conditions.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their programs to otherwise qualified individuals with disabilities.  29 U.S.C. § 794(a).  "In the prison context, a plaintiff can make out a *prima facie* case of discrimination under both the ADA and the Rehabilitation Act by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability." *Farris v. Kurr*, No. 16-CV-272-SMY-RJD, 2018 WL 3036130, at *3 (S.D. Ill. June 19, 2018) (citing *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)).

Plaintiff "may establish discrimination by presenting evidence that the defendant intentionally acted on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's denial of benefits disproportionately impacts disabled people."  *Washington v. Indiana High Sch. Athletic Assoc., Inc.*, 181 F.3d 840, 847 (7th Cir. 1999).  While the failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 672 (7th Cir. 2012), the accommodation "need not be perfect or the one most strongly

15

preferred by the plaintiff, but it still must be effective." *Meyer v. Walthall*, --F.Supp.3d--, 2021 WL 1326565, at *23 (S.D. Ind. Mar. 25, 2021) (internal citations and markings omitted).

Evaluating the reasonableness of a particular accommodation in the prison context is particularly fact-intensive and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff. *Golden v. Illinois Dep't of Corr.*, No. 12-CV-7743, 2016 WL 5373056, at *4 (N.D. Ill. Sept. 26, 2016) (citing *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001); *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015)). "Security concerns, safety concerns, and administrative exigencies [are] important considerations to take into account." *Id.* (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996)). The key question is whether the inmate was able to participate in the activities in question, given his disability, with or without reasonable accommodations from the prison. *Love*, 103 F.3d at 560.

Here, it is undisputed that Plaintiff is a qualified individual with a disability and that IDOC is a public entity. Thus, the only question is whether the IDOC denied him access to a program or activity because of his disability. The IDOC Defendants argue that Plaintiff has failed to demonstrate that he was discriminated against based on his disabilities. Further, the IDOC Defendants contend that Plaintiff was provided with appropriate accommodations for his disabilities based on medical recommendations. Specifically, the IDOC Defendants point to Plaintiff's medical records to show that his wheelchair was prescribed by a medical professional and that Plaintiff had never complained of any problems with his wheelchair (Doc. 108, p. 10). The IDOC Defendants

also present that Plaintiff is provided with "round-the-clock access to medical staff and assistance cleaning and/or bathing when required" (Doc. 108, p. 9). Plaintiff also has access to a call button and has scheduled shower/bath times each where he is assisted during the transition from his wheelchair to the tub by inmate porters (*Id.* at p. 10). Plaintiff also has more access to showers than other offenders in the event he soils himself (*Id.*).

Plaintiff asserts, on the other hand, that a reasonable juror could find that the IDOC failed to reasonably accommodate his disability by relying on other inmates rather than care professionals to assist Plaintiff with his accidents or falls, and by transferring Plaintiff to the general population in February 2018. To the extent Plaintiff claims that he was denied access to proper hygiene or other activities during his brief transfer to the general population, Plaintiff has developed no record to refute the sworn statements provided by Defendants. Defendants proffer that Plaintiff asked to be housed in the general population and received clearance from a medical professional to do so. Further, Plaintiff was transferred to an ADA complaint cell with the assistance of an ADA attendant (Doc. 108-4). Similarly, Plaintiff received his wheelchair from a medical professional, and Plaintiff has offered no evidence that his wheelchair is deficient apart from his summary conclusions (Doc. 108-4). It is not enough to summarily refute the Defendants' allegations; Plaintiff must create a material dispute of fact. Accordingly, there is no indication in the record that the IDOC Defendants denied Plaintiff access to any specific programs or activities or failed to provide him a reasonable accommodation for his disabilities.

Plaintiff has not otherwise articulated what programs or activities he was denied access to. Nor has Plaintiff argues that any of the IDOC Defendants intentionally discriminated against him because of his disability. In sum, Plaintiff has not provided any evidence that the IDOC Defendants actually discriminated against him, and Plaintiff has not provided any evidence to refute the sworn statements provided by the IDOC Defendants that show Plaintiff's treatment, wheelchair, and transfer to the general population were reasonable accommodations for Plaintiff's disability based on the professional judgment of medical providers. Accordingly, the record here does not establish a violation of the ADA or Rehabilitation Act. Therefore, the IDOC Defendants are entitled to summary judgment on Plaintiff's claims in Count 1 under the ADA and the Rehabilitation Act.

## Conclusion

For the above-stated reasons, the motion for summary judgment (Doc. 107) filed by Defendants IDOC, Baldwin, and Jaimet is **GRANTED**. The motion for summary judgment filed by Defendants Wexford and Reeder is (Doc. 101) is **DENIED**.

**SO ORDERED.**

Dated: September 8, 2021

_____
DAVID W. DUGAN
United States District Judge